# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| **JUUL LABS, INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**JAIDEN ZEIGLER, AADIT PATEL, RIC PINEDO, ASMA BANO, VIKRAM KUMAR, MITCHELL WOOD, RIKKI PINNEDHO, NAT CARUSO, HANBING TANG, JOSEFA HERRERA, NIMA POURDEHMOBED, HY RICKY, and CARL HARRELS,**<br><br>        **Defendants.** | **Civil Action No. 1:18-cv-01382-CMB-TCB** |

## FIRST AMENDED VERIFIED COMPLAINT

Plaintiff Juul Labs, Inc., ("Plaintiff" or "JLI"), by counsel, alleges as follows for its First Amended Verified Complaint against the Defendants Jaiden Zeigler ("Zeigler"), Aadit Patel ("Patel"), Ric Pinedo ("Pinedo"), Asma Bano ("Bano"), Vikram Kumar ("Kumar"), Mitchell Wood ("Wood"), Rikki Pinnedho ("Pinnedho"), Nat Caruso ("Caruso"), Hanbing Tang (唐韩兵) ("Tang"), Josefa Herrera ("Herrera"), Nima Pourdehmobed ("Pourdehmobed"), Hy Ricky ("Ricky"), and Carl Harrels ("Harrels") (collectively "Defendants").

## NATURE OF THE SUIT

1.       JLI files this action to stop the sale of counterfeit JUUL-brand products, including to minors. Defendants trade upon JLI's world-renowned reputation to sell, without age

restriction, nicotine extract pods displaying counterfeit versions of JLI's federally-registered trademarks (the "Counterfeit JLI Pods"). Neither the production nor sales of these Counterfeit JLI Pods is subject to regulatory oversight of any kind and should be stopped immediately.

2. JLI is a pioneer in Electronic Nicotine Delivery Systems (*i.e.*, "ENDS") and related technologies, having spent years and invested millions of dollars to develop and introduce into the market in 2015 its branded, innovative, and breakthrough ENDS product. The JUUL-branded system is intended for adult smokers seeking a nicotine alternative to traditional combustible cigarettes.

3. The JUUL System is comprised of two components: (i) a battery device and (ii) disposable pods ("JUULpods") prefilled with a proprietary mixture of vaporizer carriers, nicotine salt extracts, and flavoring (together, "e-liquid"). When a user inserts a pod into the device and inhales from the mouthpiece of the system, the device rapidly heats the e-liquid in the pod aerosolizing it to allow the user to inhale a "puff" of the vaporized e-liquid.

4. The JUUL System has been widely adopted and attained tremendous commercial success and acclaim, currently garnering over 72% of the overall ENDS market.[1]

5. Seeking to both free ride on JLI's success and misappropriate JLI's marketplace identity, Defendants create hundreds of online stores and auctions, misleadingly designing them to appear as selling genuine JUULpods, while instead selling Counterfeit JLI Pods, containing unregulated ingredients, to unknowing consumers.

6. Critically important here, beyond the irreparable harm to Plaintiff JLI and its goodwill with consumers, Defendants' egregious infringement and otherwise fraudulent conduct

---

[1] *See* Richard Craver, *Juul expands e-cig market share gap with Reynolds' Vuse*, Winston-Salem J. (Aug. 25, 2018), https://www.journalnow.com/business/juul-expands-e-cig-market-share-gap-with-reynolds-vuse/article_0bb4d442-fc0f-5c00-8b05-29bbf95dc985.html.

as detailed herein poses potentially serious health consequences for the public and requires immediate judicial intervention. The pods sold by all parties contain e-liquids that are vaporized and then inhaled by humans when used in the electronic nicotine delivery system. Whereas the JUUL-brand products are subject to strict quality control standards and the ingredients have been disclosed to the FDA (as part of JLI's ongoing compliance with required FDA submissions under the "Deeming Date" regulations), the public has no way of knowing who is making these counterfeit products, with what ingredients, and with what (if any) quality control and health safety measures. Compounding this concern is the fact that the manufacturer or source of Defendants' product remains a mystery. The quality, safety, and integrity of the counterfeit pods is unknown and, based on facts discussed below, there is good reason to believe that the product contents may potentially be harmful to users. This case thus not only concerns harm to JLI's reputation and goodwill in the marketplace, but also identifies a potentially tremendous risk to the many consumers who are mistakenly buying and using the counterfeit products under the false impression that they are either a legitimate JUUL System product, or are somehow authorized by or affiliated with JLI. To prevent potentially harmful consequences to the public, immediate injunctive relief is requested and justified.

7. Equally concerning is Defendants' reckless disregard for age restrictions placed on tobacco products. Whereas JLI sells through retail outlets that require age verification and JLI uses industry-leading age verification to restrict access to its products from JLI's on-line store, these Defendants do not use age verification systems and, in some cases, might be targeting underage users. Indeed, Defendants allow anyone, including those under the legal age, to purchase their counterfeit products. This conduct is not only unlawful, but causes significant, irreparable harm to JLI, tarnishing JLI's reputation by falsely linking it to the sale of products to

underage individuals. To prevent such potentially harmful consequences to the under-aged public, immediate injunctive relief is also requested and justified.

8.      Plaintiff JLI is thus forced to file this action to combat Defendants' unauthorized use of its registered trademarks, as well as to protect unknowing consumers and underage individuals from purchasing the inferior, and potentially harmful, Counterfeit JLI Pods. JLI has been, and continues to be, irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' willful actions, and thus seeks injunctive and monetary relief.

## **JURISDICTION AND VENUE**

9.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*., 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1121.

10.     Plaintiff's claims against Defendants for counterfeiting, trademark infringement, false designation of origin, and trademark dilution are based on Defendants' misuse of Plaintiff's trademarks to market and sell Counterfeit JLI Pods, sale and shipment of such counterfeit products to consumers in this District, and, on information and belief, use of instrumentalities in the District to promote and sell Counterfeit JLI Pods including through use of online marketplaces, such as eBay.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Virginia and this District, through at least the Online Marketplace Accounts/Internet Stores identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are seeking to do business with this District's residents by operating one or more commercial

Defendant Internet Stores through which Virginia residents are misled to purchase counterfeit products using Plaintiff's trademarks. Each of the Defendants has targeted sales from Virginia residents by operating online stores that offer shipping to the United States, including Virginia and this District, and accept payment in U.S. dollars. Plaintiff has confirmed that Defendants ship their Counterfeit JLI Pods to this District by requesting shipping information from each of the Defendants' Internet Stores. Each of the Defendants is committing tortious acts in Virginia, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the Commonwealth of Virginia.

**PARTIES**

**Plaintiff**

12.     Plaintiff Juul Labs, Inc. ("JLI") is a corporation organized in the State of Delaware, with its principal place of business at 560 20th Street, San Francisco, California 94107.

13.     Plaintiff JLI's revolutionary JUUL System, is the best-selling electronic nicotine delivery system on the United States market, currently enjoying over 72% of the U.S. market share of the total electronic nicotine delivery system category.[2] JLI's current market share is a direct result of its superior proprietary technology, and the satisfying and unique user experience it offers to customers. Vaping360 ("The Home of Vaping") ranked the JUUL System first in its 2017 buyers guide, noting its "unique and innovative" and high-tech design.[3]

14.     The JUUL electronic nicotine system entered the market in April 2015. The system is designed for and directed to existing adult smokers who seek a real alternative to

---

[2] *See supra* footnote 2.

[3] *See Best E-Cigarettes*, Vaping360 (Feb. 6, 2017), http://vaping360.com/e-cigarettes/#a6d34d530a8aaf6d59f29c01a22c5a5ba3e694ae9448d079fbeec1cb8b740c15.

smoking traditional, combustible cigarettes. The current JUUL System is comprised of a main device that houses the electronics of the system, and an individual pod containing JLI's proprietary e-liquid that is vaporized when the user inhales a puff. Each JUUL Pod contains approximately the same amount of nicotine as one would find in one pack of cigarettes, delivering approximately 200 puffs under normal use.

15. JUULpods are typically sold in packs of four; an example of genuine JUULpods in their original packaging is shown below:



16. JLI uses and owns the following registered trademarks, for which it also owns common-law trademark rights ("Plaintiff's Trademarks" or "JLI's Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce | Goods |
|---|---|---|---|---|
| 4818664 | JUUL | Sept. 22, 2015 | June 1, 2015 | Class 1: Nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes. |

| Reg. No. | Mark | Reg. Date | First Use in Commerce | Goods |
|---|---|---|---|---|
| | | | | Class 30: Electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes. Class 34: Electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |
| 4898257 | JUUL | Feb. 9, 2016 | June 1, 2015 | Class 34: nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |
| 5304697 | The mark is two-dimensional and consists of a vertical rectangle with an elongated hexagon | Oct. 10, 2017 | Mar. 28, 2016 | Class 34: Nicotine-based liquid, namely, liquid nicotine used to refill electronic cigarettes; cartridges sold filled with liquid nicotine for electronic cigarettes; electronic cigarette refill liquids, namely, chemical flavorings in liquid form used to refill electronic cigarettes; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes; electronic |

| Reg. No. | Mark | Reg. Date | First Use in Commerce | Goods |
|---|---|---|---|---|
| | shape inside the rectangle with the hexagon located at approximately the center of the rectangle. | | | cigarettes; electronic smoking vaporizers, namely, electronic cigarettes; tobacco substitutes in liquid solution form other than for medical purposes for electronic cigarettes. |

17.     JLI's Trademarks have been used exclusively and continuously by JLI and have never been abandoned. The above U.S. registrations for JLI's Trademarks are valid, subsisting, and in full force and effect. True and correct "status" copies of these registrations, obtained from the Trademark Status Document Retrieval ("TSDR") database of the United States Patent and Trademark Office, are attached hereto as **Exhibit 1**. The registrations for JLI's Trademarks constitutes *prima facie* evidence of their validity and of JLI's exclusive right to use these trademarks pursuant to 15 U.S.C. § 1057(b).

18.     JLI's Trademarks perform an important source-identifying function for JLI's electronic nicotine vaporizer devices and pod products, signifying to purchasers that the products come from JLI and are manufactured according to JLI's high-quality standards. JLI's Trademarks are inherently distinctive, and have acquired considerable brand loyalty through JLI's sales, including from direct word-of-mouth promotion by consumers. Indeed, according to a recent article from CNBC, JLI is "dominating the [e-cigarette] industry."[4] In addition, JLI has expended significant effort in developing the JLI Trademarks in the United States. The market reputation and consumer goodwill associated with JLI's Trademarks are of incalculable and inestimable value to JLI.

---

[4] Angelica LaVito, CNBC.com, *E-cigarette sales are booming thanks to Juul* (Aug. 21, 2018), https://www.cnbc.com/2018/08/21/e-cigarette-sales-are-booming-thanks-to-juul.html (last accessed Aug. 24, 2018).

**Defendants**

19.     Defendants are individuals and business entities who, upon information and belief, reside within the United States. Defendants conduct business throughout the United States, including within the Commonwealth of Virginia and this Judicial District, through the operation of online marketplaces, such as eBay. Each Defendant specifically targets and/or directs their products to the Commonwealth of Virginia. For example, each Defendant purposely avails themselves of doing business in Virginia at least by specifically offering shipments to Virginia within the Defendant Internet Stores. Moreover, each Defendant has offered to sell and, on information and belief, has sold and continues to sell Counterfeit JLI Pods to consumers within the Commonwealth of Virginia and this District.

20.     Defendant Zeigler is an individual who, on information and belief, resides at 3343 West Hialeah Avenue, Littleton, Colorado 80123, and uses the email address jzchristopher22@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

21.     Defendant Patel is an individual who, on information and belief, resides at 1219 Florida Avenue, NE, Apartment 6, Washington, DC 20002, and uses the email address aadit.patel.pp@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

22.     Defendant Pinedo is an individual who, on information and belief, resides at 1812 Castro Street, Oakland, California 94612, and uses the email address ofess8931@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

23.     Defendant Bano is an individual who, on information and belief, resides at 6750 De Moss Drive, Apartment 208, Houston, Texas 77074, and uses the email address

abdul.rasheed0424@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

24.     Defendant Kumar is an individual who, on information and belief, resides at 7707 Sunrise Lane, Apartment 3, Irondale, Alabama 35210, and uses the email address vikramshaid772@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

25.     Defendant Wood is an individual who, on information and belief, resides at 5782 S West Bay Shore Drive, Suttons Bay, Michigan 49682, and uses the email address legno.mitchell@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

26.     Defendant Pinnedho is an individual who, on information and belief, resides at 1341 N Fries Avenue, Wilmington, California 90744, and uses the email address prookint3793@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

27.     Defendant Caruso is an individual who, on information and belief, resides at 1824 80th Street, Apartment 1F, Brooklyn, New York 11214, and uses the email address caruso.nat@outlook.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

28.     Defendant Tang is an individual who, on information and belief, resides at 5650 Lindbergh Lane, Bell, California 90201, and uses the email address xyer5698@outlook.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

29.     Defendant Herrera is an individual who, on information and belief, resides at 154 Kent Avenue, Bridgeport, Connecticut 06610, and uses the email address lunasagesapphire@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

30.     Defendant Pourdehmobed is an individual who, on information and belief, resides at 1618 Hennepin Drive, Henderson, Nevada 89014, and uses the email address pourdehmobednima@yahoo.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

31.     Defendant Ricky is an individual who, on information and belief, resides at 7541 Pingue Drive, Columbus, Ohio 43085, and uses the email address 3517846700@qq.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

32.     Defendant Harrels is an individual who, on information and belief, resides at 3548 Calera Drive, New Port Richey, Florida 34652, and uses the email address harrelscarl35@gmail.com, among others, to sell Counterfeit JLI Pods, and who is, on information and belief, associated with the other Defendants.

33.     On information and belief, Defendants knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of JLI's Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Defendants each use similar or the same pictures and descriptions of the JUULpods in their Online Marketplaces. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. Plaintiff files this Amended Complaint,

however, because it has learned additional information about the Defendants from PayPal. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

**DEFENDANTS' UNLAWFUL CONDUCT**

34.     The success of the JUUL brand has resulted in significant counterfeiting of its nicotine pod products. To combat that unfortunate but predictable reality, JLI was forced to initiate an anti-counterfeiting program designed to regularly investigate suspicious pods reported by consumers, or otherwise identified in the marketplace. JLI's watchful eye for counterfeiting stems from both public health and business considerations. JLI is primarily concerned with the potential health issues associated with counterfeit products of unknown origin, and as well as reckless sales of counterfeit products to minors. Secondarily, JLI seeks to halt lost sales,[5] negative impact on the legitimate business job market, and broader economic damages such as lost tax revenue every year.

35.     Recently, JLI became aware of Defendants' online sales of Counterfeit JLI Pods, and strongly suspected those goods to be counterfeit because, *inter alia*, they were priced at substantially lower prices than genuine JUULpods, which retail for $15.99 for a pack of four pods.  So, JLI reviewed pod offerings from each of the Defendant Internet Stores to determine their authenticity. Copies of Defendants' Counterfeit JLI Product offerings are attached as **Exhibit 2**. This review confirmed that the products offered by the Defendant Internet Stores were, in fact, Counterfeit JLI Pods.

---

[5] *See* Alanna Petroff, *The 'Fakes' Industry is worth $461 billion*, CNN.com (Apr. 18, 2016), http://money.cnn.com/2016/04/18/news/economy/fake-purses-shoes-economy-counterfeit-trade/index.html (last accessed Aug. 24, 2018).

36.     On information and belief, Defendants reside primarily in the United States and utilize Defendant Internet Stores to sell Counterfeit JLI Pods by the thousands.

37.     On information and belief, Defendants act in concert to make and distribute the Counterfeit JLI Pods to the United States. These tactics include similar pricing structures, similar descriptions of the Counterfeit JLI Pods, similar product sourcing, and similar payment methods.

38.     Defendants offered to ship the goods into this Judicial District. Images of the shipping page from each of the Defendant Internet Stores are attached as **Exhibit 3**.

39.      JLI has inspected the goods offered by Defendants and has determined that they are counterfeit. Almost all of Defendants' Counterfeit JLI Pods are nothing more than cheap, low quality, and potentially harmful imitations of genuine JUULpods.

40.     Defendants drive sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be JLI authorized online retailers, outlet stores, or wholesalers. The Counterfeit JLI Pods are packaged using virtually identical packaging as genuine JUUL products. And Defendants further perpetuate the illusion of legitimacy by purporting to offer "customer service" and using indicia of authenticity and security that consumers have come to associate with JLI's authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. JLI has not licensed or authorized Defendants to use any of JLI's Trademarks, and none of the Defendants are authorized retailers of genuine JUULpods.

41.     Defendants also deceive unknowing consumers by using JLI's Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for JUULpods. On information and belief, Defendants show JLI's Trademarks in

product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for JUULpods.

42.     Further, on information and belief, Defendants have gone to great lengths to conceal their identities and often use multiple fictitious names, business names, and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their counterfeiting operations, and to avoid being shut down.

43.     In addition to operating under multiple fictitious names, Defendants in this case, and defendants in other similar cases against online counterfeiters, use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities *via* international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.[6]

44.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts behind layers of payment gateways so that they can continue operation in

---

[6] *See* Homeland Security, *Intellectual Property Rights: Fiscal Year 2012 Seizure Statistics*, 2012 (Jan. 16, 2013), https://www.cbp.gov/sites/default/files/documents/FY2012%20IPR%20Seizure%20Statistics_0.pdf (last accessed August 24, 2018).

spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their accounts to offshore bank accounts outside the jurisdiction of this Court.

45.     Finally, Defendants also regularly falsely describe their products to evade detection by Plaintiff and the authorities, and to circumvent controls on these types of products implemented by the online marketplaces. *See* **Exhibit 2.**

46.     Defendants, without any authorization or license from JLI, have knowingly and willfully used and continue to use JLI's Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit JLI Pods into the United States, including Virginia, over the Internet. The Defendant Internet Stores offer shipping to the Commonwealth of Virginia, and, on information and belief, each Defendant has sold Counterfeit JLI Pods in Virginia and this District.

47.     Defendants' use of JLI's Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit JLI Pods, including the sale of Counterfeit JLI Pods in Virginia, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## JOINDER IS APPROPRIATE

48.     Joinder is appropriate because, on information and belief, Defendants' sale of Counterfeit JLI Pods gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Counterfeit JLI Pods. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Counterfeit JLI Pods. Moreover, the Counterfeit JLI Pods share similar characteristics,

including, for example, similar typographical errors, incorrect packaging, and similar shapes and sizes.

## COUNT I - TRADEMARK INFRINGEMENT AND COUNTERFEITING
## (15 U.S.C. § 1114)

49.     JLI hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 48.

50.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of JLI's federally-registered trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Trademarks are distinctive marks.

51.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of JLI's Trademarks without JLI's permission.

52.     JLI is the exclusive owner of Plaintiff's Trademarks. JLI's United States registrations (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of JLI's rights in Plaintiff's Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiff's Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Counterfeit JLI Pods among the general public.

53.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     JLI has no adequate remedy at law and, if Defendants' actions are not enjoined, JLI will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff's Trademarks.

55.     The injuries and damages sustained by JLI has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit JLI Pods.

## COUNT II- FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

56.     JLI hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55.

57.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit JLI Pods has created, and is creating, a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with JLI or the origin, sponsorship, or approval of Defendants' Counterfeit JLI Pods by Plaintiff.

58.     By using JLI's Trademarks on the Counterfeit JLI Pods, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit JLI Pods.

59.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit JLI Pods to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

60.     JLI has no adequate remedy at law and, if Defendants' actions are not enjoined, JLI will continue to suffer irreparable harm to its reputation and the associated goodwill of its brand.

## COUNT III- TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

61.     JLI hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 60.

62.     JLI's Trademarks have become famous and distinctive worldwide through JLI's continuous and exclusive use in connection with JLI's products and services.

63.     Because JLI's products and services have gained a reputation for superior quality based on its proprietary technology, durability, and performance, JLI's Trademarks have gained substantial renown.

64.     Defendants have willfully and intentionally used, and continue to use, JLI's Trademarks in connection with the advertisement, promotion, and sale of Defendants' products.

65.     Defendants' use of JLI's Trademarks has caused, and continues to cause, irreparable injury to and actual dilution of the distinctive quality of JLI's Trademarks in violation of 15 U.S.C. § 1125(c). Defendants' wrongful use of JLI's Trademarks dilutes, blurs, tarnishes, and whittles away the distinctiveness of JLI's Trademarks.

66.     Defendants have used, and continue to use, JLI's Trademarks willfully and with the intent to dilute JLI's Trademarks, and with the intent to trade on Plaintiff's reputation and the goodwill inherent in Plaintiff's Trademarks.

67.     As a direct and proximate result of Defendants' conduct, JLI has suffered irreparable harm to JLI's Trademarks.

68.     Unless Defendants are enjoined, JLI's Trademarks will continue to be irreparably harmed and diluted. Plaintiff has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Defendants' actions are allowed to continue.

69.     Defendants have used, and continue to use, JLI's Trademarks, or counterfeits thereof, willfully, and with the intent to dilute JLI's Trademarks and trade on JLI's reputation and goodwill. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1111(a).

70.     As a direct and proximate result of Defendants' conduct, JLI is entitled to the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Defendants from their infringing and diluting use of JLI's Trademarks pursuant to 15 U.S.C. § 1117.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment against Defendants as follows:

A.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

1.  using Plaintiff's Trademarks or any reproductions, counterfeit copies or colorable imitations thereof, in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine JUUL Product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks;

2.  passing off, inducing, or enabling others to sell or pass off any product as a genuine JUUL Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademarks;

3.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit JLI Pods are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

4.  further infringing Plaintiff's Trademarks and damaging Plaintiff's goodwill; and

5. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any JLI Trademark, including Plaintiff's Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof.

B. Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third-party processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo (collectively, the "Third Party Providers") shall:

1. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiff's Trademarks; and

2. disable and cease displaying any advertisements used by, or associated with, Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's Trademarks.

C. That Defendants account for, and pay to Plaintiff, all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

D. In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of each of Plaintiff's Trademarks.

E. That Plaintiff be awarded its reasonable attorneys' fees and costs.

F. Award any and all other relief that this Court deems just and proper.

Date: December 3, 2018

Respectfully submitted,

 /s/ Monica Riva Talley
Monica Riva Talley (VSB No. 41840)
Dennies Varughese, Pharm.D. (*pro hac vice*)
Nirav N. Desai (VSB. No. 72887)
Nicholas J. Nowak (*pro hac vice*)
Daniel S. Block (*pro hac vice*)
STERNE KESSLER GOLDSTEIN & FOX, PLLC
1100 New York Ave., N.W., Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
mtalley@sternekessler.com
dvarughe@sternekessler.com
ndesai@sternekessler.com
nnowak@sternekessler.com
dblock@sternekessler.com

*Attorneys for Plaintiff*

## VERIFICATION OF FIRST AMENDED VERIFIED COMPLAINT

I, Matthew J. Hult, under penalty of perjury of the laws of the United States declare:

I am employed by Juul Labs, Inc. as Senior Director, Intellectual Property and I have read, and am familiar with, and have personal knowledge of the contents of the foregoing First Amended Verified Complaint; and that the allegations thereof are true and correct or, to the extent that matters are not within my personal knowledge, that the facts stated therein have been assembled by authorized personnel, including counsel, and that I am informed that the facts stated therein are true and correct.

Executed on November 29, 2018

Matthew J. Hult
Senior Director, Intellectual Property
Juul Labs, Inc.