UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **JUUL LABS, INC.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**JAIDEN ZEIGLER, et al.,**<br><br>    **Defendants.** | Civil Action No. 1:18-cv-01382-CMH-TCB |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION FOR ENTRY OF DEFAULT JUDGMENT

Pursuant to Fed R. Civ. P. 55(b)(2), Plaintiff Juul Labs, Inc. ("Plaintiff") by counsel submits this Memorandum in Support of its Motion for Default Judgment seeking entry of Judgment against the remaining Defendant Nat Caruso in this Action ("Defendant" or "Defendant Caruso") on all Counts of the First Amended Verified Complaint ("Amended Compl.") pursuant to Fed. R. Civ. P. 55.

**I. Introduction**

Plaintiff filed a Motion with this Court under Fed. R. Civ. P. 55(b)(2) for a default judgment against Defendant for Trademark Infringement and Counterfeiting, False Designation of Origin, and Trademark Dilution after Defendant unlawfully established an eBay internet store ("Defendant Internet Store") to offer to sell and sell Counterfeit JLI Pods. Defendant's unauthorized use of JLI's registered trademark has resulted in substantial detriment to Plaintiff in the form of lost profits, trademark dilution, and tarnishment, among other harms.

Defendant Caruso has been properly served pursuant to Fed. R. Civ. P. 4 and is aware of this action, but nevertheless chose not to respond. Defendant did not file a response and the Clerk has entered default.

By its default, Defendant has conceded the truth of the allegations of the Amended Complaint. There are no issues of fact remaining in this suit, and default should be entered against Defendant providing permanent injunctive relief as well as an award of statutory damages.

## II. Background Facts

### A. Plaintiff

Plaintiff is a pioneer in Electronic Nicotine Delivery Systems (i.e., "ENDS") and related technologies, having spent years and invested millions of dollars to develop and introduce into the market in 2015 its branded, innovative, and breakthrough ENDS product. Amended Compl. ¶ 2. The JUUL-branded system is intended for adult smokers seeking a nicotine alternative to traditional combustible cigarettes. *Id*.

Plaintiff's revolutionary product, JUUL, is the best-selling electronic nicotine delivery system on the United States market. Plaintiff's current market share is a direct result of its superior proprietary technology, and the satisfying and unique user experience it offers to customers. Amended Compl. ¶ 13. A leading industry magazine ranked the JUUL system first in its 2017 buyers guide, noting its "unique and innovative" and high-tech design. *Id.*

The current JUUL system is comprised of a main device that houses the electronics of the system, and an individual pod containing Plaintiff's proprietary e-liquid that is vaporized when the user inhales a puff. Amended Compl. ¶ 14.

JUUL Pods are typically sold in packs of 4; an example of genuine JUUL Pods in their original packaging are shown below:



Amended Compl. ¶ 15.

Plaintiff uses and owns numerous registered trademarks, for which it also owns common-law trademark rights ("Plaintiff's Trademarks"). Plaintiff's Trademarks have been used exclusively and continuously by Plaintiff and have never been abandoned. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, and in full force and effect. *See* Amended Compl. ¶ 17 and D.I. 1-2.

Plaintiff's Trademarks perform an important source-identifying function for Plaintiff's electronic nicotine vaporizer devices and pod products, signifying to purchasers that the products come from Plaintiff and are manufactured according to Plaintiff's high-quality standards. Amended Compl. ¶ 18. Plaintiff's Trademarks are inherently distinctive, and have acquired considerable brand loyalty through Plaintiff's sales, including from direct word-of-mouth promotion by consumers. *Id.* In addition, Plaintiff has expended significant effort in developing its Trademarks in the United States. The market reputation and consumer goodwill associated

with Plaintiff's Trademarks are of incalculable and inestimable value to Plaintiff. Complaint ¶ 18.

### B. Defendant

Defendant Caruso is an individual who, upon information and belief, resides within the United States. Amended Compl. ¶ 19. Defendant conducts business throughout the United States, including within the State of Virginia and this Judicial District, through the operation of online marketplaces, such as eBay. *Id*. The Defendant targets the United States, including Virginia, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit JUULpods (the "Counterfeit JLI Pods") to consumers within the United States, including the State of Virginia and this District. *Id.*

Defendant Caruso is an individual who, on information and belief, resides at 1824 80th Street, Apartment 1F, Brooklyn, New York 11214, and uses the email address caruso.nat@outlook.com, among others, to sell Counterfeit JLI Pods. *Id.* ¶ 27.

### C. Nature of the Suit

Plaintiff filed this action on November 5, 2018 against the Unincorporated Associations Identified in Schedule A of its Complaint. *See* D.I. 1. On December 3, 2018, Plaintiff filed the First Amended Verified Complaint. The Amended Complaint sought permanent injunctions and damages related to the unauthorized use of the Plaintiff's trademarks including damages related to false designation of origin, trademark infringement and counterfeiting, and trademark dilution. *Id*.

In accordance with Rule 4(e) of the Federal Rules of Civil Procedure, Defendant Caruso was served with the Amended Complaint and Summons on December 6, 2018. Pursuant to Rule 4(l) of the Federal Rules of Civil Procedure, Plaintiff filed proof of service on December 20,

2018. *See* D.I. 49. On March 26, 2019 the Clerk entered default against Defendant Caruso. *See* D.I. 71.

**III.     Argument**

   **A.     This Court has Jurisdiction to Enter Default Judgment Against Defendant**

This Court has jurisdiction to grant Plaintiff's motion and enter default judgment against Defendant Caruso because the Court has subject matter jurisdiction over this action as well as personal jurisdiction over Defendant. The Court has subject matter jurisdiction over this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), 28 U.S.C. § 1331, and 28 U.S.C. §1121. *See* Amended Compl. ¶ 9.

This Court has personal jurisdiction over Defendant because of its substantial contacts with the Eastern District of Virginia as well as directly targeting the District in its counterfeit operations. Further, Defendant sold products in this District, establishing personal jurisdiction over Defendant. *See id*. ¶ 11.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over the Defendant since the Defendant directly targets business activities toward consumers in the United States, including Virginia and this District, through at least the Online Marketplace Accounts/Internet Store identified in Schedule A. Specifically, Defendant is seeking to do business with this District's residents by operating a commercial Defendant Internet Store through which Virginia residents can purchase products using counterfeit versions of Plaintiff's trademarks. The Defendant has targeted sales to Virginia residents by operating an online store that offers to ship to the United States, including Virginia and this District, and accept payment in U.S. dollars. Plaintiff confirmed that Defendant ships its

Counterfeit JLI Pods to this District by purchasing goods from the Defendant's Internet Store, which the Defendant shipped into this District. See id. ¶ 11.

Personal jurisdiction may be established either by specific or general jurisdiction, but specific jurisdiction is appropriate in the instant case because of Defendant's contact with the forum. See *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). The factors to consider when establishing specific jurisdiction are: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id*. Defendant Caruso satisfies each of the factors to establish specific personal jurisdiction.

First, Defendant purposefully availed himself of the privilege of conducting business in Virginia, and this District. Defendant purposefully targeted the sales of Counterfeit JLI Pods to the Eastern District of Virginia, offered to sell counterfeit products to Virginia residents, and did in fact sell counterfeit products to entities in Virginia. See Amended Compl. ¶ 19. These actions are sufficient to establish jurisdiction over Defendants. See VA Code § 8.01-328.1(B).[1]

Second, Plaintiff's claims arise directly from actions that occurred in this district. Plaintiff purchased counterfeit products to determine their authenticity and had the counterfeit goods shipped to Virginia. See Amended Compl. ¶¶ 38–39. These unauthorized and unlicensed sales of counterfeit and infringing products in this District establish this Court's jurisdiction over Defendant.

---

[1] Recently, the Fourth Circuit explained that its decisions in *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) and *Christian Sci. Board of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) did not establish a *de minimis* test for contacts between an out-of-state defendant and a web server. See *United States v. Batato*, 833 F.3d 413, 424 (4th Cir. 2016).

Lastly, this Court's exercise of specific personal jurisdiction over Defendant is "reasonable" under the constitution. Courts look at the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

The record in this case does not suggest that the burden of litigation in this District is extraordinary. Defendant offered to ship and sell its products to any part of the United States. *See* Amended Compl. ¶ 11. Virginia and this Court have a "valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 297 (4th Cir. 2009). And Plaintiff has a "valid and substantial interest in having its legal rights recognized and vindicated." *Id*. Therefore, this Court's exercise of specific personal jurisdiction over Defendant is constitutionally reasonable.

**B.     The Clerk Properly Entered Default Judgment Against Defendant**

The Clerk of this Court enters a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Clerk entered default judgment against Defendant because, as the docket reflects, the time for filing a responsive pleading expired.

The facts, supported by uncontroverted declarations and the Verified Complaint filed in this case, demonstrate that Defendant had both constructive and actual notice of this suit, yet failed to enter an appearance or otherwise defend this action. Therefore, the Clerk appropriately entered default judgment against Defendant in this action pursuant to Fed. R. Civ. P. 55.

### C. Plaintiff is Entitled to a Default Judgment Against Defendant

By failing to appear or otherwise defend against the First Amended Verified Complaint, Defendant is deemed to have admitted every allegation therein, and the Court must only determine whether Plaintiff's Complaint properly states a claim for relief. *See Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Pursuant to Fed. R. Civ. P. 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defendant is liable on all counts of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2).

### 1. Defendant's Trademark Infringement, Counterfeiting, and False Designation of Origin (Counts I and II)

The uncontested allegations contained in the Complaint establish Defendant's liability for trademark infringement and counterfeiting. A party is liable for trademark counterfeiting if, without consent of the registrant, that party "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(b). A party is liable for false designation of origin if the use of the mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

8

To prove trademark infringement, Plaintiff must show: "(1) that it owns a valid and protectable mark; (2) that [Defendants] use[] a re-production, counterfeit, copy, or colorable imitation of that mark in commerce and without [Plaintiff]'s consent; and (3) that [Defendants'] use is likely to cause confusion." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007) (internal quotations omitted).[2] This Court must determine if Defendant's use of Plaintiff's marks will create a likelihood of confusion. *See id*.

The Fourth Circuit established a list of seven non-exclusive factors to consider when determining if a product creates a likelihood of confusion: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). These factors are not always relevant or equally emphasized in each case. *See id*.[3]

First, Plaintiff's Trademarks are inherently distinctive and famous. Plaintiff's Trademarks perform an important source-identifying function for Plaintiff's electronic nicotine vaporizer devices and pod products, signifying to purchasers that the products come from Plaintiff and are manufactured according to Plaintiff's high-quality standards. Plaintiff's Trademarks are inherently distinctive, and have acquired considerable brand loyalty through Plaintiff's sales, including from direct word-of-mouth promotion by consumers. *See* Amended Compl. ¶ 18.

---

[2] The validity and protectability of Plaintiff's marks are not at issue in this case, nor is the fact that Defendants use "colorable imitations" of Plaintiff's marks. Under *Haute Diggity Dog*, this Court need not consider those factors. *See* 507 F.3d at 259.

[3] On information and belief, Defendant does not use similar facilities or advertising for their products. Therefore Plaintiff will not consider *Pizzeria Uno* factors four and five for the purpose of this Motion.

9

Plaintiff also takes numerous steps to enforce their trademark rights, such as the instant action. *See id*. ¶ 34. The balance weighs heavily in favor of the Plaintiff with respect to *Pizzeria Uno* factor one.

Second, Defendant creates exact replicas of Plaintiff's distinctive marks to sell the Counterfeit JLI Pods. *See id*. ¶ 41. These marks are intended to confuse the consumer. Thus, *Pizzeria Uno* factor two also weighs in favor of Plaintiff.

Third, Defendant's products are intended as replacement for genuine JUUL pods. Consumers often buy these pods instead of genuine JUUL pods. *See id*. ¶ 5. Thus, *Pizzeria Uno* factor three weighs in favor of Plaintiff.

Fourth, on information and belief, the Defendant's intent is to profit from the sale of Counterfeit JLI Pods by purchasing the counterfeit goods cheaply and then selling them at a price significantly cheaper than genuine pods, in order to maximize profit. *See id*. ¶¶ 35–37. Moreover, Defendant is selling these products by the thousands on Internet marketplaces, such as eBay. The only reasonable conclusion is that Defendant is engaging in these activities to make a profit by undercutting the price of genuine pods. *See id.*. Thus, *Pizzeria Uno* factor six weighs in favor of Plaintiff.

Finally, there is substantial evidence of actual consumer confusion as to the origin of Defendant's counterfeit JLI Pods. As previously noted, Defendant creates exact replicas of Plaintiff's distinctive marks to sell the Counterfeit JLI Pods. *See id*. ¶ 41. There can be no doubt that these marks are intended to confuse the consumer. Moreover, the number and quantity of Defendant's eBay auctions sales indicate that consumers mistakenly believe they are purchasing genuine JUULpods. *See* D.I. 9. Consumer confusion as to the origin of the products shows that *Pizzeria Uno* factor seven weighs in favor of Plaintiff.

For the foregoing reasons, Plaintiff is entitled to monetary relief and a permanent injunction against Defendant.

### 2. Defendant's Trademark Dilution (Count III)

Defendant's actions of advertising and selling Counterfeit JLI Pods dilutes and tarnishes Plaintiff's marks. To establish dilution by tarnishment, this Court must determine whether the "similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). As discussed above, Defendant uses exact replicas of the famous Plaintiff marks to sell their counterfeit products, but use lower quality materials when producing the counterfeit goods. The goal of trademark law is to inform the consumer of the quality of good they should expect to receive from a seller. *See generally Qualitex Co. v. Jacobson Prods. Co.*, 115 S.Ct. 1300 (1995). Here, there is no question that Defendant's actions of selling cheap, low-quality counterfeit products tarnishes Plaintiff's marks. Defendant's actions directly violate Plaintiff's trademark rights under § 1125 of the Lanham Act.

For the foregoing reasons, Plaintiff is entitled to an injunction against Defendant.

### 3. Plaintiff is Entitled to Statutory Damages

The Lanham Act provides that the Plaintiff may elect at any time to recover statutory damages "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117 (c)(2). Defendant purposefully infringes Plaintiff's marks for profit. *See* Amended Compl. ¶¶ 34–47. The undisputed facts of this case show that Defendant's actions must be willful use of a counterfeit mark under the

11

meaning of the Lanham Act.[4] Because Defendant willfully uses Plaintiff's marks to sell counterfeit goods, Plaintiff is entitled to statutory damages of $2,000,000 per counterfeit mark.

Defendant's actions of counterfeiting and treading on Plaintiff's marks warrant a severe deterrent. This Court has awarded a trademark holder with the maximum statutory damages where the defendant's actions were "clearly willful" and the maximum damages were necessary to "deter similar actors in the future." *See Graduate Mgmt. Admission Counsel v. Raju*, 267 F. Supp. 2d. 505 (E.D. Va. 2003). This case, like *Raju*, warrants the full force of the law and Plaintiff respectfully requests a statutory damages award of $2,000,000 for each mark infringed (at least one word mark and the design mark), for a total of $4,000,000. Plaintiff requests this amount as part of their ongoing efforts to combat trademark infringement and to deter other individuals or corporations from infringing Plaintiff's valuable marks.

### 4. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defendant from infringing or otherwise violating Plaintiff's registered trademark rights in the Plaintiff's Trademarks, including at least all injunctive relief previously awarded by this Court to Plaintiff in the temporary restraining order and preliminary injunction. Plaintiff is also entitled to injunctive relief so they can take prompt action against any new online marketplace accounts or websites that are identified, found to be linking to Defendant, and selling Counterfeit JLI Pods. A plaintiff is entitled to a permanent injunction for infringement of a trademark right pursuant to 15 U.S.C. § 1116(a). *See Microsoft Corp. v. Does 1-2*, 1:16-cv-

---

[4] The Lanham Act defines a counterfeit mark as a mark "registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116 (d)(1)(B)(i).

00993-GBL-TCB, at *3 [D.I. No. 59] (Aug. 1, 2017); *Teaching Co. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 587 (E.D. Va. 2000).

A permanent injunction, like the statutory damages, would help deter other individuals or corporations from infringing Plaintiff's valuable marks. Additionally, entry of a permanent injunction against the Defendant in this case will help expedite any future litigations between the defaulting Defendant and Plaintiff, if a case between the parties arises in the future. This equitable result would be in the interest of justice and provide Plaintiff with more flexibility to protect their intellectual property rights.

### 5. Plaintiff Requests that this Court Order the Transfer to Them of the Remaining Assets in Defaulting Defendant's PayPal Account

Plaintiff filed for a temporary restraining order and preliminary injunction to prevent Defendants from transferring the funds held in their PayPal account beyond this Court's jurisdiction. *See* D.I. 11, 30. This Court granted the temporary restraining order and preliminary injunction, preventing Defendants from accessing the funds in their PayPal accounts. *See* D.I. 23, 44. This Court found that Plaintiff had established a likelihood of success on the merits and irreparable harm in the absence of a temporary restraining order and preliminary injunction. *See id*.

Plaintiff now respectfully requests that, in the event this Court grants Plaintiff's Motion for Default against the Defendant, this Court order PayPal, Inc. to transfer to Plaintiff the assets currently held in the defaulting Defendant's PayPal account as partial payment of any award of damages. In the absence of such an order, it is likely that Plaintiff will be left without any effective means by which to collect from Defendant any monetary judgment entered by this Court. As explained previously, Defendants in other similar cases against online counterfeiters, use a variety of other common tactics to evade enforcement efforts such as operating under

multiple fictitious names. In addition, counterfeiters like Defendant will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Amended Compl., ¶ 43.

Such orders are routinely entered by other Courts to satisfy monetary judgment awards in similar counterfeiting cases. *See, e.g.*, *Eye Safety Sys., Inc. v. The P'ships and Unincorporated Ass'ns Identified in Schedule "A"*, Case No. ILND-1:18-cv-00034 [D.I. 41 (Mar. 1, 2018)] (ordering PayPal to transfer defendants' funds to plaintiffs as partial satisfaction of judgment); *see also Spin Master Ltd. et al v. The Unincorporated P'ships and Ass'n Identified in Schedule "A"*, Case No. ILND-1:18-cv-01270 [D.I. 39 (Apr. 25, 2018)] (same); *Levi Strauss & Co. v. The Unincorporated P'ships and Ass'ns Identified in Schedule "A"*, Case No. ILND-1:17-cv-04561 [D.I. 33 (Aug. 1, 2017)] (same); *Yeti Coolers, LLC v. Taneil George, et al*, Case No. FLSD-0:17-cv-62215 [D.I. 46 (Mar. 29, 2018)] (same); *Mycoskie, LLC v. csmlong188 et al.*, Case No. FLSD-0:17-cv-60782 [D.I. 43 (Jul. 21, 2017)] (same); *Fendi Adele, S.R.L. v. Alma Hernandez, et al*, Case No. FLSD-0:17-cv-62379 [D.I. 37 (Jan. 29, 2018)] (same); *Burberry Ltd. et al v. The P'ships and Unincorporated Ass'ns Identified On Schedule A*, Case No. ILND-1:17-cv-03255 [D.I. 37 (Jun. 7, 2017)] (same); *Louis Vuitton Malletier, S.A. v. Andrew Henry et al*, Case No. FLSD-0:17-cv-61034 [D.I. 40 (Aug. 22, 2017)] (same); *Cartier Int'l A.G. v. Anatoky et al*, Case No. FLSD-0:17-cv-60831 [D.I. 38 (Jul. 6, 2017)] (same); *Lacoste Alligator S.A. v. 6666 store et al*, Case No. FLSD-0:17-cv-60046 [D.I. 49 (Jun. 28, 2017)] (same); *Gucci Am., Inc. v. 8710 t-shirt shop et al*, Case No. FLSD-0:16-cv-63002 [D.I. 58 (Mar. 27, 2017)] (same); *Louis Vuitton Malletier, S.A. v. afste nxmu et al*, Case No. FLSD-0:17-cv-61819 [D.I. 39 (Dec. 12, 2017, 2017)] (same); *Volkswagen AG, et al v. The Unincorporated Ass'n Identified in Schedule "A"*, Case No. E.D. Va. 1:17-cv-01413 [D.I. 73 (Aug. 30, 2018)] (same); *Juul Labs, Inc. v. The*

*Unincorporated Associations Identified in Schedule A*, Case No. E.D. Va. 1:18-cv-01063-LO-IDD [D.I. 64 (April 5, 2019)] (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, Case No. E.D. Va. 1:18-cv-01207-LO-IDD [D.I. 60 (April 5, 2019)] (same); *Juul Labs, Inc. v. The Unincorporated Associations Identified in Schedule A*, Case No. E.D. Va. 1:18-cv-01287-LO-IDD [D.I. 65 (April 5, 2019)] (same).

### IV. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Default Judgment; enter judgment against Defendant Caruso for trademark infringement, false designation of origin, and trademark dilution; permanently enjoin Defendant Caruso from infringing Plaintiff's marks; award Plaintiff statutory damages consistent with 15 U.S.C. § 1117(c); and grant such further relief as this Court deems appropriate. Plaintiff additionally requests that this Court dissolve the preliminary injunction currently freezing Defendant's assets held by PayPal to permit the transfer of funds to Plaintiff in partial payment of any default judgment entered against Defendant Caruso.

Date: April 30, 2019

                                              Respectfully submitted,

/s/ Monica Riva Talley
Monica Riva Talley (VSB No. 41840)
Byron Pickard (VSB No. 47286)
Dennies Varughese, Pharm.D. (*pro hac vice*)
Nirav N. Desai (VSB. No. 72887)
Nicholas J. Nowak (*pro hac vice*)
Daniel S. Block (*pro hac vice*)
STERNE KESSLER GOLDSTEIN & FOX, PLLC
1100 New York Ave., N.W., Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
mtalley@sternekessler.com
bpickard@sternekessler.com
dvarughe@sternekessler.com
ndesai@sternekessler.com
nnowak@sternekessler.com
dblock@sternekessler.com

*Attorneys for Plaintiff*