UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JUUL LABS, INC. | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:18-cv-1382 (CMH/TCB) |
| JAIDEN ZEIGLER, *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Plaintiff Juul Labs, Inc.'s ("Plaintiff") Motion for Default Judgment Against Defendant Nat Caruso ("Caruso") (Dkt. 72). After representatives for Caruso failed to respond to Plaintiff's motion or to appear at the hearings held on May 10, 2019 and June 7, 2019, the matter was taken under advisement.[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED.

### I. INTRODUCTION

On November 5, 2018, Plaintiff commenced this action against Caruso as well as several other co-defendants. Approximately one month later, Plaintiff filed its First Amended Verified Complaint. The First Amended Complaint alleges trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114; false designation of origin in violation of 15 U.S.C. § 1125(a); and trademark dilution in violation of 15 U.S.C. § 1125(c). (Am. Compl. ¶¶ 49-70.) Over the course

---

1. Relevant filings before the Court include Plaintiff's First Amended Verified Complaint (Dkt. 29) ("Am. Compl."); Plaintiff's Motion for Entry of Default Judgment (Dkt. 72) ("Mot. Default J."); Plaintiff's Memorandum in Support of Plaintiff's Motion for Entry of Default Judgment (Dtk. 73) ("Mem. Supp."); and all attachments and exhibits submitted with those filings.

of the next several months, Caruso's various co-defendants were dismissed from the case. (Dkts. 53, 56, 61-62, 67.) Now, Caruso is the only remaining defendant. Plaintiff moves for an entry of default judgment against Caruso, seeking an award of monetary damages and a permanent injunction.

## A. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject-matter jurisdiction and personal jurisdiction over the defaulting parties, and venue must be proper.

The Court has subject-matter jurisdiction over this action. A federal district court has original jurisdiction when an action involves a civil action "arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331. In this case, Plaintiff asserts trademark infringement claims against Caruso pursuant to the Lanham Act, a federal statute. (Am. Compl. ¶ 9.) Accordingly, the Court has subject-matter jurisdiction.

The Court has personal jurisdiction over Caruso in this action. For personal jurisdiction over a defendant, the standards of both federal due process and the forum state's long-arm statute must be satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Virginia's long-arm statute, Virginia Code § 8.01-328.1, "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). With federal due process and Virginia's long-arm statute requiring the same standards, essentially only one personal jurisdiction inquiry is required. *See id.* The inquiry to find personal jurisdiction requires either

specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distrib.*, 682 F.3d at 301 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). Caruso targeted business activities toward consumers in the United States, including Virginia and this judicial district. (Am. Compl. ¶¶ 11, 19; Mem. Supp. at 5-7.) Therefore, Caruso has maintained sufficient contacts with Virginia based on conduct connected to this case for personal jurisdiction to be proper in Virginia courts, and so the Court has personal jurisdiction over Caruso under the specific jurisdiction inquiry.

Venue in this action is proper in this Court. Venue in a court is proper when the action is brought in a judicial district in which a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2). In this case, venue in this Court is proper because Caruso conducted business with consumers in this Court's judicial district, by targeting sales to Virginia residents, by operating an online store available to consumers in this district, and shipping counterfeit products to consumers in this district. (Am. Compl. ¶¶ 11, 19; Mem. Supp. at 5-6.)

### B. Service of Process

Before the Court can render default judgment, it must be satisfied that all defaulting parties have been properly served. As a general rule, a defendant must be served with the summons and complaint filed with a federal court. Pursuant to Federal Rule of Civil Procedure 4(e)(2), an individual within a judicial district of the United States may be served by delivering a copy of the summons and complaint to the individual personally. On December 3, 2018, a summons was issued for Nat Caruso at 1824 80th Street, Apartment 1F, Brooklyn, New York 11214. (Dkt. 39 at 25.) The return of service indicates that Plaintiff's private process server personally served Caruso at that address on December 6, 2018. (Dkt. 49.)

Based on the foregoing, the undersigned finds that Caruso was properly served with the summons and complaint.

### C. Grounds for Default Judgment

The entry of default judgment may be appropriate when a defendant has failed to appear in a case. *See* Fed. R. Civ. P. 55. To date, Caruso has not appeared or otherwise participated in these proceedings. On March 21, 2019, Plaintiff filed its initial Request for Entry of Default as to Caruso. (Dkt. 64.) On March 25, 2019, Plaintiff file an Amended Request for Entry of Default as to Caruso. (Dkt. 68.) One day later, the Clerk of the Court issued the Entry of Default for Caruso. (Dkt. 71.) On April 30, 2019, Plaintiff filed its Motion for Default Judgment. United States Magistrate Judge Ivan D. Davis then held a hearing on Plaintiff's Motion for Default Judgment on May 10, 2019, at which no representative for Caruso appeared. Approximately eleven (11) days later, it came to the undersigned's attention that Plaintiff did not properly serve Caruso with the Motion for Default Judgment, including the corresponding Notice of Hearing. As a result, the Court ordered Plaintiff to serve Caruso with the Motion and supporting documents and to re-notice the Motion for a hearing. (Dkt. 77.) Plaintiff subsequently complied with that order. (Dkts. 78-79.) On June 7, 2019, United States Magistrate Judge Davis again held a hearing on Plaintiff's Motion for Default Judgment, at which no representative for Caruso appeared. Finding the matter uncontested, the undersigned took the matter under advisement to issue this Report and Recommendation.

### II.   FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that Plaintiff has established the following facts.

Plaintiff is a Delaware corporation with its principal place of business in San Francisco, California. (Am. Compl. ¶ 12.) Plaintiff sells JUUL, an electronic nicotine delivery system

4

designed for and directed to existing adult smokers who seek an alternative to smoking traditional, combustible cigarettes. (*Id.* ¶ 14.) The system involves (1) a main device which contains the system electronics and (2) individual pods containing e-liquid that is vaporized when a user inhales a puff. (*Id.*) Plaintiff owns trademarks for JUUL and has valid and subsisting U.S. Certificates of Trademark registration numbers ("Marks"). (*Id.* ¶¶ 16-17.) Plaintiff's Marks have acquired considerable brand loyalty, are associated with superior quality products, and are considered by some to be a dominating force in the e-cigarette industry. (*Id.* ¶¶ 18, 62-63.) Plaintiff uses and advertises its marks throughout the United States, expending significant effort in developing the Marks in the United States. (*Id.* ¶ 18.) Plaintiff greatly values the reputation and consumer goodwill associated with the Marks. (*Id.*)

Caruso is an individual residing in Brooklyn, New York. (*Id.* ¶ 27.) Caruso offered to sell and has sold counterfeit pods to consumers within the Commonwealth of Virginia and this judicial district. (*Id.* ¶¶ 19, 33.) These goods are cheap, low quality, and potentially harmful imitations of genuine pods. (*Id.* ¶ 39.) Caruso sold, and might continue to sell, these counterfeit products on online marketplaces, such as eBay. (*Id.* ¶ 19.) In promoting his counterfeit products on the marketplace, Caruso employs counterfeit versions of Plaintiff's Marks, using similar or the same pictures and descriptions of the Pods. (*Id.* ¶ 33.) The counterfeit pods are packaged using virtually identical packaging as Plaintiff's genuine products and Caruso even offered customer service. (*Id.* ¶ 40.) Caruso also used other indicia of authenticity and security that consumers associate with Plaintiff's products by displaying the Visa, MasterCard, and/or PayPal logos. (*Id.*) Caruso also deceives consumers by using Plaintiff's Marks within the content, text, and/or meta tags of his website to attract various search engines looking for relevant consumer searches for Plaintiff's products. (*Id.* ¶ 41.)

Plaintiff has not licensed or authorized Caruso to use its Marks. (*Id.* ¶ 40.) Caurso's use of Plaintiff's Marks in connection with the advertising, distribution, offering for sale, and sale of counterfeit pods is likely to cause and has caused confusion, mistake, and deception among consumers. (*Id.* ¶ 47.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff asserts three separate claims against Caruso. Plaintiff alleges one count of Trademark Infringement and Counterfeiting, one count of False Designation of Origin, and one count Trademark Dilution. The undersigned will address each claim in turn.

#### A. Trademark Infringement and Counterfeiting

Plaintiff alleges a claim of trademark infringement and counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114. The Lanham Act prohibits the use of a colorable imitation of a registered mark in connection with the distribution of goods and services where such use is likely to cause confusion or to deceive. 15 U.S.C. § 1114(1). For a claim of trademark infringement, a plaintiff must show that: (1) it owns a valid mark; (2) the defendant used the mark in commerce and without authorization; (3) that the defendant used the mark, or an imitation of the mark, in

6

connection with the sale, offering for sale, distribution, or advertising of goods or services; and (4) the defendant's use of a colorable imitation of the mark is likely to cause confusion among consumers. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir. 2012). To determine the likelihood of confusion, the Fourth Circuit has stated that nine factors should generally be considered:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;
> (2) the similarity of the two marks to consumers;
> (3) the similarity of the goods or services that the marks identify;
> (4) the similarity of the facilities used by the markholders;
> (5) the similarity of advertising used by the markholders;
> (6) the defendant's intent;
> (7) actual confusion;
> (8) the quality of the defendant's product; and
> (9) the sophistication of the consuming public.

*George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009) (first citing *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984); and then citing *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996)). "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *Id.* (quoting *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)). Moreover, when the allegedly infringing mark is nearly an exact imitation of a plaintiff's mark in an apparent attempt to capitalize upon its popularity, "there is a presumption of a likelihood of confusion." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

Similarly, a trademark counterfeiting claim requires a plaintiff to establish that "(1) the defendant intentionally used a counterfeit mark in commerce; (2) the defendant knew that the mark was counterfeit; (3) the use occurred in connection with the sale, offering for sale, or distribution of goods, and (4) the use of the counterfeit mark was likely to confuse consumers." *Assoc. Gen. Contractors of Am. v. Stokes*, No. 1:11-cv-795 (GBL/TRJ), 2013 WL 1155512, at *3 (E.D. Va.

Mar. 19, 2013) (citation omitted).

Here, Plaintiff sufficiently pleaded their first count. First, Plaintiff's First Amended Complaint establishes that it possesses valid, protectable Marks. Plaintiff registered those Marks with the United States Patent and Trademark Office. In addition, Plaintiff's Marks have acquired significant brand loyalty through Plaintiff's sales, investments, and production of superior quality products. As a result, Plaintiff possesses valid, protectable Marks. The second and third factors also point towards allowing Plaintiff to prevail on this Count as Caruso used Plaintiff's Marks without authorization to market and sell counterfeit products. Finally, Caruso's use of Plaintiff's Marks is likely to cause confusion with consumers. Caruso used replicas of Plaintiff's Marks and virtually identical packaging to sell the counterfeit pods. Because Caruso used an exact imitation of Plaintiff's Marks, Plaintiff receives the benefit of a presumption of a likelihood of confusion.

For very similar reasons, the undersigned finds Plaintiff also establishes its trademark counterfeit claim. Plaintiff has established that Caruso used a counterfeit mark in commerce, as Defendant used marks that were nearly identical and essentially indistinguishable from Plaintiff's own Marks. Plaintiff has established that Caruso intentionally and knowingly used the counterfeit marks, as Caruso deliberately replicated Plaintiff's Marks to appear to be an authorized online retailer of Plaintiff's products. Additionally, Plaintiff sufficiently pleaded that Caruso used the counterfeit marks to promote the sale of counterfeit products. And, as previously described, Caruso's use of the counterfeit marks is likely to confuse consumers. Plaintiff's Marks are distinctively associated with its products and services, and Caruso utilized practically indistinguishable counterfeit marks in an attempt to appear as an authorized reseller of Plaintiff's products to consumers.

### B. False Designation of Origin

Plaintiff alleges that Caruso misrepresented the origin of the counterfeit products in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). The Lanham Act prohibits, among other things, using "in commerce any word, term, name, symbol, or device . . . or any false designation of origin" that "is likely to cause confusion, or to cause mistake." 15 U.S.C. § 1125(a)(1). For a claim of false designation of origin, a plaintiff must prove that (1) it has a valid, protectable mark and (2) the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *See Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012). Such a claim is essentially the same as a claim for federal trademark infringement of a registered trademark under the Lanham Act. *See Nationstar Mortg., LLC v. Ahmad*, 155 F. Supp. 3d 585, 592 (E.D. Va. 2015). As discussed above, Plaintiff owns valid, protectable marks. Moreover, Caruso's use of those marks is likely to cause confusion among consumers as consumers are likely to believe Caruso's counterfeit products are sponsored or approved by Plaintiff. Therefore, Plaintiff successfully alleges a false designation of origin claim.

### C. Trademark Dilution

Finally, Plaintiff alleges that Caruso's use of Plaintiff's Marks dilutes and tarnishes Plaintiff's Marks in violation of 15 U.S.C. § 1125(c). To state a claim of federal trademark dilution under 15 U.S.C. § 1125(c), a plaintiff must show:

> (1) that the plaintiff owns a famous mark that is distinctive; (2) that the defendant has commenced using a mark in commerce that allegedly is diluting the famous mark; (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks; and (4) that the association is likely to impair the distinctiveness of the famous mark or likely to harm the reputation of the famous mark.

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007).

Dilution may result from "tarnishing," which occurs when the similarity between a mark or trade name and a famous mark harms the reputation of the famous mark. 15 U.S.C. § 1125(c).

First, Plaintiff owns the Marks, which are famous and distinctive. Here, Plaintiff uses and advertises its marks throughout the United States, expending significant effort in developing the Marks in the United States. Additionally, the Marks are actually recognized as representing Plaintiff's products and Plaintiff has registered the Marks. Second, Caruso has commenced using a mark in commerce that is allegedly diluting Plaintiff's Marks. Caruso has invoked and used Plaintiff's Marks, or exact copies, in connection with his efforts to sell counterfeit versions of Plaintiff's products. Third, because Caruso has used Plaintiff's Marks or exact copies, there is a clear similarity between his marks and Plaintiff's Marks (indeed they are identical), which gives rise to an undesired and unauthorized association between the marks. Finally, this association is likely to harm the reputation of Plaintiff's Marks. Caruso's counterfeit products are of low quality and could be potentially harmful imitations of genuine products sold by Plaintiff.

Therefore, plaintiffs have adequately stated a claim against defendant for trademark dilution.

## IV. REQUESTED RELIEF

Plaintiff seeks statutory damages for Caruso's trademark infringement as well as the issuance of a permanent injunction. (Mot. Default J. at 1, Proposed Order at 1-2.) In assessing damages, "a district court entering a default judgment may award damages ascertainable from the pleadings." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998). Therefore, the Court considers each type of Plaintiff's requested damages in turn.

### A. Statutory Damages

Plaintiff seeks $4,000,000.00 in statutory damages for Caruso's infringement of the Marks. (Pl.'s Mem. Supp. at 11-12.) In a case involving a defendant's use of a counterfeit mark, the trademark owner may elect to recover an award of statutory damages. *See* 15 U.S.C. § 1117(c). When defendant's use of a counterfeit mark is willful, statutory damages may be awarded up to, but may not exceed, the amount of $2,000,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed." *Id.* § 1117(c)(2). In the determining the appropriate amount of statutory damages to award, a court "must take into account the need to deter others engaged in selling counterfeit goods, particularly those whose marketplace is the internet." *Diane Von Furstenberg Studio v. Snyder*, No. 1:06-cv-1356 (JCC), 2007 WL 3143690, at *6 (E.D. Va. Oct. 23, 2007).

In past cases, this Court tended to award statutory damages for willful counterfeit use in the range of $100,000.00 to $120,000.00. *See, e.g., Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 942 (E.D. Va. 2011) (awarding $120,000.00 in total statutory damages); *Diane Von*, 2007 WL 3143690, at *6 (awarding $100,000.00 in statutory damages for one counterfeit mark). However, maximum statutory damages for use of counterfeit marks will be awarded when a defendant's counterfeit use "is sufficiently broad, extensive, blatant, and willful." *Playboy Enters., Inc. v. Asiafocus Int'l, Inc.*, No. Civ. A. 97-734-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998); *see also Gmbh v. Illnitskiy*, No. 1:17-cv-415 (LMB/TCB), 2018 WL 1882823, at *6-7 (E.D. Va. Jan. 25, 2018) (awarding $32,000,000 in statutory damages for defendant's sixteen separate uses of a counterfeit mark), *report and recommendation adopted by* 2018 WL 844401 (E.D. Va. Feb. 13, 2018).

Plaintiff is entitled to statutory damages, as Caruso willfully used counterfeit versions of

11

Plaintiff's Marks. As previously noted, Plaintiff's Marks are famous and distinctive. Moreover, Plaintiff registered those Marks. Nonetheless, Caruso deliberately replicated Plaintiff's Marks and employed marks that were essentially indistinguishable. Additionally, Caruso used those Marks in bad faith in an attempt to gain profit at the expense of Plaintiff's reputation by displaying and using Plaintiff's Marks for purposes of promotion and sale of counterfeit versions of Plaintiff's products through online marketplaces. (Am. Compl. ¶¶ 51-53.) Caruso actively sought to trick consumers by (1) using similar or the same pictures and descriptions of the Pods; (2) using virtually identical packaging as Plaintiff's genuine products; (3) offering customer service; (4) employing other indicia of authenticity and security that consumers associate with Plaintiff's products by displaying the Visa, MasterCard, and/or PayPal logos; and (5) using Plaintiff's Marks within the content, text, and/or meta tags of his website. (*Id.* ¶¶ 33, 40-41.) Therefore, the undersigned finds that Plaintiff willfully used Plaintiff's Marks to sell counterfeit goods.

Accordingly, the undersigned determines that an award of $4,000,000.00, the maximum amount of statutory damages for the use of two counterfeit marks, is appropriate as statutory damages in this case. This maximum amount of statutory damages not only serves to repair the harm done to Plaintiff, but also serves the goal of dissuading Caruso and others from partaking in such willful counterfeit use in the future.

### B. Injunctive Relief

Plaintiff requests that this Court enter a permanent injunction enjoining Caruso from infringing or otherwise violating Plaintiff's rights in its Marks, including all injunctive relief previously awarded by this Court to Plaintiff in the temporary restraining order and preliminary injunction. (Pl.'s Mem. Supp. at 12-15.) Plaintiff also requests injunctive relief directing PayPal, Inc. to release to Plaintiff the monies currently restrained in Caruso's financial accounts as partial

payment for its requested award of statutory damages. (Pl.'s Mot. Default J., Proposed Order at 1.)

The Lanham Act provides that a court may grant an injunction to prevent the infringement of trademarks. 15 U.S.C. § 1116(a). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). If an order is entered granting an injunction, it is "binding upon the parties; the parties' officers, agents, servants, employees and attorneys; and other persons who are in active concert or participation" with the parties. Fed. R. Civ. P. 65(d).

The undersigned determines that a permanent injunction as requested by Plaintiff is appropriate against Caruso, as all four elements of the Fourth Circuit's test for a permanent injunction are satisfied. First, Plaintiff suffered and continues to suffer irreparable injury as Caruso willfully infringed Plaintiff's Marks causing a likelihood of confusion among consumers and thereby irreparably harming the reputation of Plaintiff's Marks. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement." (citation omitted)).

Second, other remedies available at law are inadequate to compensate Plaintiff. Despite repeated attempts to communicate with Caruso and efforts to get him to participate in this lawsuit, Caruso failed to respond. The lack of an appropriate response from Caruso shows a threat of continued infringement, as well as a likely lack of cooperation by Caruso with any remedy short

of a permanent injunction.

Third, the only hardship that would befall Caruso by granting Plaintiff's requested permanent injunction would be the requirement to follow clearly established trademark law. Therefore, the balance of hardships weighs in Plaintiff's favor, as Caruso would face barely any hardship at all.

Fourth and finally, public interest favors an injunction. An injunction would prevent the public from being confused by Caruso's inferior, and potentially dangerous, counterfeit marks and products.

For the aforementioned reasons, the undersigned finds that Plaintiff's requested permanent injunction is the best means to prevent future infringement by Caruso.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED and that an entry of default judgment should be entered in favor of Plaintiff against Caruso for trademark infringement and counterfeiting, false designation of origin, and trademark dilution. The undersigned further recommends that Plaintiff be awarded $4,000,000 in statutory damages. Additionally, the undersigned recommends that Plaintiff receive the injunctive relief outlined in its proposed order (Mot. Default J., Proposed Order), including that Caruso be permanently enjoined from infringing Plaintiff's trademark rights.

VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to Defendant Caruso at the following address of record:

Nat Caruso
1824 80th Street
Apartment 1F
Brooklyn, NY 11214

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

June 11, 2019
Alexandria, Virginia

15